### Thos. J. Mims v. Sara Rafel.
#### No. 2674.

1. **Limitation as Title.**—Ten years adverse possession of land under the statute confers title which is not affected by a cessation of possession after the title had been so acquired by possession.

2. **Fact Case.**—See facts held sufficient to support the defense of ten years limitation in a suit for land.

APPEAL from Harris. Tried below before Hon. James Masterson.

Upon the issue of limitation of ten years, upon which the case was decided, the testimony was as follows:

Rankin testified that he had known this tract of land in controversy for nineteen or twenty years; that a man named Pate lived on it with his

family, occupying and cultivating about fifteen acres continuously from witness's first recollection of it some nineteen years ago up to Pate's death in the winter of 1878-9—the fall of 1878 or early part of 1879. That on Pate's death his family remained on the land and made one or two crops and then moved away. Pate held under and for Major Garey. Witness knew the lines of the tract; was with the surveyor when he ran them for Major Garey, and knew that the Pate dwelling house and improvements were on this land; they occupied about the same ground now occupied by the defendant Mims.

Woodward testified to the same effect in substance; that he had lived near this tract of land for many years, and knew Pate and his family well, and that they went on their land about 1866 as Major Garey's tenants and occupied it continuously until the fall of 1880.

Charpiot testified the same; that he had lived near this tract of land since 1859, and knew Pate and his family and the place well; that they moved on the land in 1865 or 1866. Pate's house was about 150 feet from where the defendant Mims' house now is. Pate's improvements consisted of a dwelling house, smoke house, some out houses, and two small fields under fence and cultivation, containing in all some fifteen to eighteen acres of land; that Pate and his family lived there and cultivated this land continuously from 1866 up to Pate's death, about January, 1879, his daughters and son-in-law, Berwick, remaining on the place and cultivating it for two years more. They left in the fall of 1880 after making the second crop. He is positive of this. The land was said to belong to Major Garey; Pate held as his tenant.

Major J. E. Garey, under whom defendant held, testified that he bought this land from Wm. M. Cook in 1864 without any knowledge of a previous sale by Cook; that a year or two afterwards he found this man Pate living on the land, and he kept Pate there as his tenant, the agreement being that Pate should hold the land for him, but no rent being paid so far as witness remembers; does not remember just when Pate died, but at his death his daughters came to see witness and sought and procured his consent to remain on the land as his tenants, which they did, and he did not know of their leaving the land until long after they had gone. Three or four years before witness sold to Mims he found out that the land was claimed adversely, but he has always claimed it as his own.

Gillespie in rebuttal testified that he had been county surveyor for many years; that he surveyed this land for some one, and the paper now handed him and made part of his testimony is his report of that survey, and the date affixed to it, July 5, 1881, is the date of his being on the land. That at that date there was no one living on the land. The house was there, but abandoned and rickety, and the fences down. Can not tell how long since the people have left the place, but from appear-

ances should judge a year at least.    The report bears date July 5, 1881, and calls for Pate's house and field, which the plat accompanying it shows to have been on this tract.

Judgment was for the plaintiff and defendant appealed.

*Hutcheson, Carrington & Sears,* for appellant. — 1.    The testimony showed ten years continuous possession from March, 1870, to the fall of 1880, and there is no evidence to support a contrary finding.    Under such circumstances this court will reverse a finding of fact.    Rev. Stats., arts. 3194 to 3199; Pasch. Dig., arts. 4621, 4624; Willis v. Lewis, 28 Texas, 191; Shropshire v. Doxey, 25 Texas, 128; Block v. Sweeney, 63 Texas, 419, 427, and cases cited; La Belle v. Tidball, 69 Texas, 161.

2.    The pedal possession and occupancy of a part of the land under recorded deeds defining the extent of the possessor's claim was a valid possession of the whole tract under the ten years statute of limitations. The defendant is not restricted to the spot actually occupied, nor must he plead and prove the exact locality and dimensions of that spot.    Rev. Stats., art. 3194; Pasch. Dig., art. 4621; Craig v Cartwright, 65 Texas, 413, 422, 423; Pearson v. Boyd, 62 Texas, 541, 545; Bowles v. Brice, 66 Texas, 724, 730.

3.    Garey's ten years possession once complete matured in him the superior title, the title to the land, which could not be lost by abandonment or revested in the plaintiff by a subsequent breach in the continuity of the possession.    Rev. Stats., art. 3196; Pasch. Dig., arts. 4623, 4624; Craig v. Cartwright, 65 Texas, 422; Spofford v. Bennett, 55 Texas, 293; Erhard v. Hearne, 47 Texas, 469; Cunningham v. Frandtzen, 26 Texas, 38; Andrews v. Parker, 48 Texas, 94, 99.

*F. D. Minor,* for appellee.—The judgment of the court below in favor of appellee being supported and warranted by the evidence on the defense of limitation, such judgment will not be disturbed by this court on appeal, but every presumption will be indulged by this court, in favor of the judgment of the trial court, particularly as the witnesses on the question of limitation testified orally before such court, and appellant did not call for nor was there obtained the separate findings of fact and conclusions of law of the trial court.    Rev. Stats., art. 3215; Railway v. Larkin, 64 Texas, 454; Railway v. Dawson, 62 Texas, 260; Reeves v. Roberts, 62 Texas, 550; Howard Oil Co. v. Farmer, 56 Texas, 301.

Gaines, Associate Justice.—This was a statutory action of trespass to try title brought by appellee against appellant.    The pleas were not guilty, the statutes of limitations, and improvements in good faith.    The judgment was for plaintiff for the land and in favor of defendant on his claim for improvements.    Both parties assign errors.

The appellant, the defendant below, insists that the verdict is contrary to the evidence upon the defense of the statute of limitations. The plaintiff claimed under the will of her deceased husband, who claimed under a deed to him made by one G. S. Cook, attorney in fact of William M. Cook, in 1847. Neither the date of the husband's death nor of the probate of his will is shown by the record.

The defendant claimed under a deed from Wm. M. Cook to one Garey, dated April 7, 1864, and a conveyance from Garey to himself, made in 1885. Garey testified that a year or two after his purchase he found one Pate living upon the land; that he and Pate then agreed that the latter should remain in possession and hold the land for Garey; that Pate subsequently died, when his daughters came to the witness and asked permission to remain, which was granted. He did not know how long they remained.

Three other witnesses testified as to the occupancy of the land by Pate. The testimony of all three of them was to the effect that he occupied the land continuously from about 1866 to the time of his death, and that he died in the latter part of the year 1878 or the early part of 1879. Two of them testified that after Pate's death his son-in-law remained on the land until he had made two crops. The other testified that Berwick remained until he had made one or two crops. One of the three swore distinctly that Berwick left the land in the fall of 1880. It also appeared that Pate while he held possession declared that he was holding under Garey. It also appeared that Pate's daughters having obtained permission of Garey to remain after their father's death, it is to be presumed in the absence of some proof to the contrary that Berwick, the son-in-law, continued the possession in the right of his wife, and that his possession was the possession of Garey.

The statute of limitations began to run March 30, 1870, and this evidence shows that Garey's possession by his tenants continued for more than ten years, the longest period required by the statute in order to perfect his title. To rebut this testimony a witness was introduced who testified that he surveyed the land in controversy July 5, 1881, and that then the house was abandoned and "rickety," that the fence around the field had fallen down in many places and cattle roamed through it, and weeds and undergrowth had taken possession. "I can not tell how long the people had left the place, but from appearances should judge a year at least prior to July 5, 1881." This evidence is quite consistent with that of Rankin, one of defendant's witnesses before referred to, who testified that before Berwick abandoned the place "the house got rickety," and that he lived in the smoke house. Under these circumstances the testimony of the surveyor does not cast a suspicion upon that of defendant's witnesses as to the time that Berwick left the premises. There are no conclusions of law and fact found in the record, and we do not know upon

what ground the trial judge held the evidence insufficient to sustain the defense of the statute of limitations, but a careful examination of the statement of facts satisfies us that his conclusion in that particular is contrary to the evidence, and the judgment must therefore be reversed.

There is no replication of coverture to the defendant's plea of limitation, nor evidence of that or other disability which would have suspended the operation of the statute.

The other questions presented by the assignments and cross-assignments of error may not arise upon another trial and will not be considered.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered March 12, 1889.