Clay County Land and Cattle Company v. C. T. Skidmore.

Decided June 28, 1901.

**1.—Pleading—Averment Upon Information and Belief.**

Where plaintiff, the purchaser, suing for the cancellation of an executory contract for the sale of land, charged the fact to be that defendant had no title to the land, it did not destroy the effect of the material fact so averred that it was charged "upon information and belief."

**2.—Same—Alternative Pleas—Cancellation and Enforcement of Contract.**

Where a purchaser of land under an executory contract brought suit to cancel the contract and recover payments made thereunder, and for improvements made on the land, alleging that the defendant vendor had no title to the land, and praying in the alternative for a reformation and enforcement of the contract in the event that the title should be found good, the pleading was not subject to demurrer as being inconsistent or contradictory because seeking both to annul and enforce the contract, since such form of pleading in the alternative is permissible under our blended system.

**3.—Contract—Sale of Land—Rescission—Possession—Damages—Sequestration.**

Plaintiff purchased land under an executory contract providing that upon default in any payment the vendor should have the right to declare the contract forfeited and resume possession, and thereafter plaintiff, being erroneously informed that his vendor had no title, made default in payment and brought suit for rescission of the contract and adjudication of his equities, tendering the vendor repossession of the premises. Subsequently plaintiff was dispossessed under sequestration proceedings regular in form sued out by the vendor, plaintiff having refused to surrender possession until his claims and equities were adjusted. Held, that a charge was erroneous instructing that plaintiff was entitled to retain possession until the vendor had returned the purchase money already received and had paid plaintiff for improvements he had placed on the land, and also erroneous in authorizing a recovery of damages by plaintiff for being lawfully dispossessed under the writ of sequestration.

**4.—Same—Default—Time—Equitable Relief.**

But a peremptory instruction to the jury to return a verdict for defendant vendor upon all the issues was properly refused, since the mere fact that plaintiff, without sufficient cause, but through an honest mistake and not willfully, had failed to make payment at the time specified in the contract would not necessarily prevent the administration of equitable relief in his behalf, if he had acted as would a person of reasonable prudence and diligence under the circumstances.

Appeal from Clay. Tried below before Hon. A. H. Carrigan.

*Allen & Wantland,* for appellant.

*R. E. Taylor* and *Chesnutt & Denny,* for appellee.

CONNER, Chief Justice.—This is an appeal from a judgment in favor of appellee for damages and extending to him the right within sixty days from its date to make payment of certain sums of principal and interest for which he was in default upon a written contract for the sale of certain land situated in Clay County, Texas. The contract was executed December 29, 1897, by both parties to the suit. It provided that appellee should take possession of the 160 acres of land appellant therein agreed to sell to hi     should make certain improvements

thereon and pay appellant therefor the sum of $1600, in amounts and at the times specified in the contract, with interest thereon payable annually at the rate of 10 per cent per annum. "Upon performance of all the covenants and agreements made" by appellee he was "entitled to receive" the general warranty deed covenanted by the appellant to be given him. The contract also provided that if appellee should "fail or refuse to make any of the payments" therein provided for, or "fail or refuse to perform any of the covenants or agreements" therein made, appellant should "have the right to declare the contract forfeited," and should have the "right to enter and retake possession of said above described land," and appellee agreed "to quietly surrender possession of said premises upon the demand" of appellant.

Appellee took possession of the land and made improvements as contemplated in the contract, and also made all payments therein provided for until January 1, 1900, at which time he defaulted as to part of the payment then due. On December 5th thereafter he instituted this suit alleging that appellant was without title, praying for a cancellation of the above contract, an adjustment of equities, and in his pleading tendered appellant repossession of the premises. Appellee, however, remained in actual possession until on February 4, 1901, upon which day he was dispossessed by sequestration proceedings in regular form sued out by appellant; appellant a short time previous thereto, to wit, about January 16, 1901, having declared its acquiescence in appellee's avowed purpose of rescission, and made written demand for possession as provided for in the contract, but which demand was refused because appellant had not paid nor offered to pay for improvements and purchase money paid as prayed for by appellee.

Omitting particular notice of the reformation of the contract decreed in accord with the prayer of appellee, and which seems from the record to be unresisted, the judgment was for appellant for the land in controversy "conditioned" upon appellee's failure to deposit in court $556 and interest from January 1, 1901, with interest at the rate of 6 per cent per annum. Upon such deposit, however, within sixty days, appellee was to have writ of possession, and thereafter retain said land subject to the terms of the written contract. Appellee was also adjudged $300 as actual damages on account of the ouster stated.

It is first insisted that appellee's amended petition upon which the trial proceeded was subject to general demurrer, in that appellee therein sought both to annul and to enforce said contract. We overrule this contention. While the mere fact that appellee had heard that appellant's title was bad will not justify his default in payment as provided for in the contract, nor authorize its rescission and the recovery for improvements and of purchase money theretofore paid, yet appellee charged the fact to be that appellant had no title, and prayed for cancellation, with adjustment of equities sufficiently setting them out. That it was so charged upon "information and belief" did not destroy the effect of the material fact charged. Nor is the petition bad because of its alter-

native feature. The prayer for the reformation and enforcement of the contract was made in effect contingent on a finding by the court that appellant's title was good. This form of pleading is permissible under our blended practice, and the petition is therefore not subject by reason thereof to the objection urged that it is inconsistent and contradictory. Fowler v. Stoneum, 11 Texas, 479'; Floyd v. Patterson, 72 Texas, 202.

The court gave the folllowing special instructions requested by appellee: "Gentlemen of the Jury: You are charged that if you believe from the evidence that plaintiff, C. T. Skidmore, went into possession of the land in controversy under an executory contract to purchase same from the Clay County Land and Cattle Company, defendant, and paid a part of the purchase money therefor, and made valuable and permanent. improvements thereon, and thereafter was informed that his vendor's title was defective, and believed and relied upon said information as. true, and filed suit asking a rescission of said contract of sale, for said supposed defects of title, and tendered in his pleading to defendant. upon the trial of said cause possession of said premises with the improve- ments thereon, and at same time asked that plaintiff be compensated for the valuable and permanent improvements placed by him upon said land, and the purchase money paid and the adjustment of rent and in- terest and equities, then you will find that the plaintiff, C. T. Skidmore,. was entitled to the possession of said premises until decreed otherwise by the court, unless you find that the Clay County Land and Cattle Com- pany paid, or offered to pay, the plaintiff for the said improvements and purchase 'money paid."

This charge must be considered in the light of its relation to other charges given, wherein the jury were instructed that if they found ap- pellant "was not entitled to the possession of said property," and that appellee had disproved the facts charged in the application for the writ of sequestration, appellee should be allowed actual damages. So consid- ered, and in view of the evidence and of the verdict for $300 actual dam- age found and adjudged to appellee, we think it quite clear that the: charge complained of is erroneous.

Appellee was not entitled to retain possession merely because he had been informed and believed appellant's title was bad. Nor was appellant. liable in damages merely because he resumed possession without having paid or offered to pay appellee for improvements, etc., as submitted. It. is undisputed that appellee failed to make payment as he had agreed, and that by the express terms of the contract appellant had the right to- retake possession in such event. Such possession was in fact tendered in appellee's original petition for rescission, and there was no prayer that. he be permitted to retain possession until the equities he set up were ad- justed, nor was any fact averred rendering this necessary in order for the court to administer full relief.

In the amended petition it is alleged that "defendants are heavily in- debted and their property heavily incumbered," and that defendants will "likely become insolvent." But no such allegation is found in the orig-

inal petition as it appears in the record, and not a particle of proof to this effect was offered on the trial  It was then and now admitted that appellant's title was good.  Appellee testified: "I am now satisfied that defendant's title is good, and I am now trying to get the contract reinstated. I became satisfied when the depositions of the clerk at Austin were taken. * * * I insisted on going to trial without making the heirs of James Williamson parties to this suit, because I had become satisfied that they didn't have any title to the land. * * * The reason I refused to make the payments on the land when they became due, was because I had heard that defendant's title was not good, as heretofore stated, and believed and relied upon same as true."

When we add that there is no evidence that adverse title had in fact ever been asserted by one claiming to be the owner, and that appellee's fear of appellant's title could have been easily dissipated, as was in fact afterwards done, by procuring a copy of the judgment record upon which such title was dependent, we scarcely see how it can be seriously contended that appellant should be mulcted in damages for having elected as it did to concur in appellee's asserted desire to rescind, and thereupon by legal method regain a possession tendered and specifically agreed to by appellee.  To do so would be to permit appellee to take advantage of his own default, and to thus recoup himself for more than one-half of the amount conceded to be due by virtue of the contract he now seeks to have enforced for his benefit.  He who seeks equity must be content to have equity administered.

Appellant insists that the court erred in refusing to give a requested peremptory instruction to the jury to find for appellant upon all issues. But we have finally concluded that we can not sustain this assignment because of evidence tending, perhaps, to show that a person of reasonable diligence and prudence would have acted as did appellee under the same circumstances, of all which it is in the first instance the function of the jury or trial court to determine.  As the suit has finally resolved itself, it is now one in which appellee seeks the specific performance of a reformed contract for the sale of land.  The mere fact that, as originally instituted, it was otherwise, and that the relief now sought was urged by amendment and in the alternative will not bar appellee, as we have already said.  Nor will the mere fact that appellee, without sufficient cause, failed to make payment at the times specified in the contract necessarily prevent the administration of equitable relief.  Says Mr. Pomeroy, in his work on Specific Performance of Contracts, section 335: "When, however, the only default of the plaintiff is delay, and the position of the defendant has not been materially changed thereby, a performance after the stipulated time may entitle the plaintiff to a decree for a specific execution, since mere lapse of time is not, in general, a sufficient ground in equity for the refusal of relief.  A forfeiture caused by the nonpayment of money, however express may be the language of the contract, will, as a general rule, be relieved from, on the theory that interest is a sufficient compensation.  But the failure to pay

must not be willful, nor the delay in payment be unreasonably long, and the plaintiff seeking relief from his default must show that it was not intentional, and has not caused irreparable injury to the defendant." See also Id., sec. 379. There is evidence tending to show that appellee is unlearned, and that before his default he had been advised by lawyers and others supposed to know that appellant had no title to the land involved, and should the court or jury find that appellee acted as would a person of reasonable prudence and diligence under the circumstances, and that his default was not willful, then the court may administer relief, if it can be done without irreparable injury to appellant. But before performance of the contract should in any event be decreed, appellee should be required to pay into court the full amount of principal and interest due appellant as per the terms of the contract, the court making such other or further equitable adjustment, if any, as may be required by the proof and circumstances of another trial. As having more or less relevancy to what we have said, see Moore v. Giesecke, 76 Texas, 543, and cases therein cited.

The judgment is reversed and cause remanded for a new trial in accordance with the views herein expressed.

*Reversed and remanded.*